Opinion
 

 KAUS, P. J.
 

 Defendant was charged with violations of Health and Safety Code sections 11351 (possession of heroin for purpose of sale) and 11357 (possession of marijuana). A motion to suppress evidence seized at the time of defendant’s arrest was denied with respect to “plain view” evidence, but granted as far as evidence not in plain view is concerned.
 
 [1]
 
 The case was then submitted, mainly on the transcript of the preliminary hearing. Defendant was found guilty of simple possession of heroin and of possession of marijuana.
 

 Facts
 

 On November 8, 1975, at about 8 p.m., Officers Taylor and Parks were flagged down by a lady who told them “that she had heard what sounded to her to be screams coming from” what later turned out to be defendant’s residence. The officers approached defendant’s house with the intention of ascertaining if anyone was in danger or if any crime was being committed. No unusual noises were heard. They knocked on the door. Defendant opened the door. The officers told him what they had been told about screams. Defendant said there was no one in the house and he had heard no screams. Taylor then asked for permission to “come in and check to make sure there is no one in here in any danger or any crime is being committed.” According to Taylor defendant then said: “Come on in.” Nevertheless, as he said so, he turned and walked rapidly toward, a bedroom on the south side of the house. According to defendant he said: “Okay. Just a minute.” He admitted that he then turned and went toward the bedroom. As to his speed, defendant
 
 *693
 
 testified at first that he moved “[a]s fast as I could walk,” which he later changed to “I walked normally like I walk anyway.” Defendant limped. Defendant admitted that he went to the bedroom “to get rid of the stuff I had on my bed.”
 

 While defendant was talking to the officers at the door, “a couple of times he turned and looked toward the bedroom and appeared to be nervous. His speech was—he was stuttering a bit as he answered the questions,. . .”
 

 In any event, the officers followed defendant to the bedroom where defendant lunged for an object on the bed. Not knowing the nature of the object, Taylor drew his service revolver and told defendant not-to move. As he pulled defendant back, he saw a small pile of brown powder and seven or eight multi-colored wrapped balloons. One of the balloons was attached to a funnel. The officer concluded that the substance was heroin and placed defendant under arrest. Defendant was removed to the living room. Taylor testified, but defendant denied, that after the arrest defendant consented to a search of the premises. Taylor re-entered the bedroom. This time he noticed an open cigar box near the head of the bed. It contained marijuana. A brown paper bag was removed from the top shelf of the bedroom closet. It contained in excess of $2,200 in cash. A hypodermic kit was recovered from the bathroom.
 

 The trial court ruled that the officers’ first entry into the bedroom was justified by concern for personal safety. Therefore it refused to suppress the “plain view” evidence—the heroin on the bed. It found however, as a matter of fact, that defendant had not consented to a search after his arrest; hence it suppressed any evidence “not in plain view”—clearly the money and the hypodermic kit.
 
 (Chimel
 
 v.
 
 California,
 
 395 U.S. 752, 762-763 [23 L.Ed.2d 685, 693, 89 S.Ct. 2034].) The record does not show whether the court considered the marijuana to be “plain view” evidence.
 

 Discussion
 

 Pointing out that the trial court refused to resolve the witnesses’ slightly conflicting versions as to what happened at the door, defendant argues that the first entry into his bedroom cannot be justified on the basis of consent. This is a red herring, since the People never relied on consent to legalize that entry. We recognize, as did the trial court, that Taylor’s following defendant into the bedroom can only be justified on the basis that he was faced with an emergency situation. We think he was.
 

 
 *694
 
 The officers were certainly entitled to knock on defendant’s door and request entry to investigate the report of screams. After defendant opened the door, he appeared to be nervous, looked over his shoulder and—without explanation—moved toward the bedroom in a seemingly hasty fashion. Taylor testified; “. .. this aroused my curiousity, fearing there was someone in the bedroom . .. and I ran in behind the defendant.” Fie was concerned that there might be a weapon and he feared for his own safety, his partner’s safety and, “if there was anyone else in the house, for that person’s safety.”
 

 Under these circumstances, Taylor was not required to remain where he was, giving defendant an opportunity to procure a weapon while out of view. Cases cited by defendant are not in point. Neither
 
 People
 
 v.
 
 Smith
 
 (1972) 7 Cal.3d 282 [101 Cal.Rptr. 893, 496 P.2d 1261], nor
 
 Horack
 
 v.
 
 Superior Court
 
 (1970) 3 Cal.3d 720 [91 Cal.Rptr. 569, 478 P.2d 1], involved situations where the police had reasonable cause to perceive an immediate threat to their own or a third person’s safety:
 

 As far as the marijuana is concerned, if the trial court did not suppress it, it should have. There is no evidence whatever that it was observed while the police were legitimately present in the bedroom or that they were even in a position to observe what they found when they later looked for it. Apparently, only a closer inspection during the second entry prompted Taylor to look into the open cigar box.
 

 The judgment is affirmed as to count 1—violation of section 11350 of the Health and Safety Code. The judgment is reversed as to count 2—violation of section 11357, subdivision (c), of the Health and Safety Code.
 

 Stephens, and Hastings, J., concurred.
 

 [1]
 

 The court was referring to physical evidence in plain view at the time of defendant’s arrest.