[Civ. No. 49876. First Dist., Div. Four. Jan. 7, 1981.]

PHILIP CHARLES TOUBUS, Petitioner, v.
THE SUPERIOR COURT OF MARIN COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Krause, Timan, Baskin, Shell & Grant and Marshall W. Krause for Petitioner.

No appearance for Respondent.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Ronald E. Niver, Deputy Attorneys General, for Real Party in Interest.

## OPINION

ANDERSON, J.*—Philip Charles Toubus has petitioned for a writ to compel respondent superior court to suppress evidence (Pen. Code, § 1538.5, subd. (m)) and consequently to set aside (Pen. Code, § 999a) an information charging him with possession for sale of cocaine (Health & Saf. Code, § 11351), trafficking in cocaine (Health & Saf. Code, § 11352) and possession of amphetamines (Health & Saf. Code, § 11377, subd. (a)).

The motion to suppress was submitted on the preliminary hearing transcript, which showed that an informant named Liz and an undercover agent of the Department of Justice, Christie McCampbell, went to petitioner's apartment in Larkspur to buy cocaine. The agent was introduced as the girl friend of informant's cousin. Previous telephone conversations had established that the informant's cousin was going to purchase the cocaine. Petitioner produced a bag of white powder; after viewing a demonstration that the powder was cocaine, McCampbell and Liz left the residence to get Agent Ken Brown, the pretended purchaser. They met with three agents and reported on the situation. McCampbell, Liz and Brown returned to the apartment where Brown was introduced as Liz' cousin. Brown then tested the cocaine and told Liz to go out and get a scale to weigh the powder. Her departure was actually a prearranged signal to Agent Platt, the officer in charge of the investigation, to enter and arrest petitioner.

Platt and two other officers who entered to make the arrest were in civilian clothes. The door had been left ajar and the officers came in without knocking. As they came through the door, they identified themselves as police officers. They arrested petitioner and also handcuffed Brown in order to hide his identity as a police officer. The arresting officers then made a cursory search of the residence to determine if there were any other people there.

Platt then obtained a warrant to search the premises for cocaine, narcotic paraphernalia, articles tending to establish identity and "any papers or writings, records that evidence dealings in controlled substances including, but not limited to address books, ledgers, lists, notebooks, etc."

---

*Assigned by the Chairperson of the Judicial Council.

While Platt was obtaining the search warrant, Brown remained to secure the premises; he later assisted Platt in executing the warrant and seizing the contraband which is the subject of the pending charges. This included the cocaine which Brown had tested in the living room as well as pills and more cocaine found in a yellow bag in the front bedroom.

Petitioner's argument includes six propositions: (1) since he was arrested in his own residence without the benefit of a judicially approved arrest warrant, his arrest is "presumptively unreasonable and illegal under both the state and federal Constitutions," citing *Payton v. New York* (1980) 445 U.S. 573 [63 L.Ed.2d 639, 100 S.Ct. 1371], and *People v. Ramey* (1976) 16 Cal.3d 263 [127 Cal.Rptr. 629, 545 P.2d 1333]; (2), there are no "exigent" circumstances to remove the case from the proscriptions of *Payton* and *Ramey*; (3), the arrest was in any event unlawful since the officers who actually made the arrest did not comply with the knock-notice requirement of Penal Code section 844; (4), therefore, the "fruits" of that arrest are tainted and must be suppressed, citing *Wong Sun v. United States* (1963) 371 U.S. 471 [9 L.Ed.2d 441, 83 S.Ct. 407]; *People v. Cook* (1978) 22 Cal.3d 67 [148 Cal.Rptr. 605, 583 P.2d 130]; *People v. Solario* (1977) 19 Cal.3d 760 [139 Cal.Rptr. 725, 566 P.2d 627]; and *People v. Negrete* (1978) 82 Cal.App.3d 328 [147 Cal.Rptr. 101]; (5), the fruits of the illegal arrest include the observations of the illegally arresting agent; and (6), the search warrant, "based upon the arrest and seizure" of the petitioner, is invalid and everything seized thereunder must be suppressed.

I

Was the Warrantless Arrest of
Defendant Unconstitutional?

■ Petitioner contends, relying on *Payton v. New York, supra*, 445 U.S. 573, and *People v. Ramey, supra*, 16 Cal.3d 263, that his arrest without a warrant in his own home was presumptively unreasonable and illegal. In *Payton* and *Ramey*, a crime had been committed. The police developed probable cause to arrest a suspect and entered the suspect's residence to arrest him without first obtaining a warrant. The United States Supreme Court in *Payton* and the California Supreme Court in *Ramey*, held it is the *entry into* a home that is the evil condemned by the Fourth Amendment. In *Payton*, Justice Stevens quotes from Judge Leventhal who, in *Dorman v. United States* (D.C.Cir. 1970) 435 F.2d

385, after first noting that arrests in public places are valid, states: "'A greater burden is placed, however, on officials who *enter* a home or dwelling without consent. Freedom from *intrusion into* the home or dwelling is the archetype of the privacy protection secured by the Fourth Amendment.'" (*Payton* v. *New York, supra*, 445 U.S. at p. 587 [63 L.Ed.2d at p. 651], italics added.) The Supreme Court then quoted approvingly from *United States* v. *Reed* (2d Cir. 1978) 572 F.2d 412: "To be arrested in the home involves not only the *invasion* attendant to all arrests but also an *invasion* of the sanctity of the home. This is simply too substantial an *invasion* to allow without a warrant, at least in the absence of exigent circumstances . . . ." (*Payton* v. *New York, supra*, 445 U.S. at pp. 588-589 [63 L.Ed.2d at p. 652], italics added.)

Likewise, the California Supreme Court in *Ramey* said: "we believe that the Fourth Amendment prohibits a warrantless *entry* into a dwelling to arrest in the absence of sufficient justification for the failure to obtain a warrant." (*People* v. *Ramey, supra*, 16 Cal.3d 263 at pp. 274-275, italics added.) But this does not imply that warrantless arrests in general must be justified by exigent circumstances excusing the lack of a warrant, and the Supreme Court expressly limited its holding to warrantless entries of dwellings for the purpose of making arrests within those dwellings. (*People* v. *Ramey, supra*, 16 Cal.3d 263 at p. 275, fn. 5.)

*Payton* and *Ramey* are inapplicable where an agent is invited by a suspect to enter. (*People* v. *Evans* (1980) 108 Cal.App.3d 193, 196 [166 Cal.Rptr. 315].) Petitioner argues that the entry here was not consensual since it was obtained by subterfuge. The argument is factually unfounded. Petitioner admitted McCampbell and Brown to sell them cocaine. McCampbell and Brown entered to purchase cocaine from him. There was no ruse. The Fourth Amendment does not protect "a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it." (*Hoffa* v. *United States* (1966) 385 U.S. 293, 302 [17 L.Ed.2d 374, 382, 87 S.Ct. 408].)

II

Does Failure to Comply With Penal Code Section 844 Invalidate the Arrest?

Petitioner contends that the arrest was invalidated by failure to comply with Penal Code section 844. Section 844 provides in pertinent

part: "To make an arrest...a peace-officer, may break open the door or window of the house in which the person to be arrested is,...after having demanded admittance and explained the purpose for which admittance is desired." The purposes of the statute are: "'(1) The protection of the privacy of the individual in his home; (2) the protection of innocent persons who may also be present on the premises where an arrest is made; (3) the prevention of situations which are conducive to violent confrontations between the occupant and individuals who enter his home without proper notice; and (4) the protection of police who might be injured by a startled and fearful householder.'" (*People v. Solario, supra,* 19 Cal.3d 760, at p. 763.) None of those purposes would be served by requiring compliance with the statute when a crime is in progress.

Here, there was no occasion to protect the privacy of petitioner in his home since a peace officer who already possessed probable cause to arrest was already in that home; there were no innocent persons on the premises who needed protecting; it was unlikely the entry without notice would provoke a violent confrontation; and with two officers already present on the premises it is highly unlikely that the police would be in any danger from actions taken by a fearful defendant. The officers who came in to make the arrest acted to assist their fellow officers who were lawfully inside the apartment and who had probable cause to make an arrest for a felony then being committed in their presence; that the officers chose to seek the help of their colleagues in accomplishing the arrest in their presence is not improper. (Cf. *People v. Cornejo* (1979) 92 Cal.App.3d 637 [155 Cal.Rptr. 238]; *People v. McCoy* (1974) 40 Cal.App.3d 854 [115 Cal.Rptr. 559].)

## III

### Was the Search Warrant "Based Upon" Petitioner's Illegal Arrest?

██ Petitioner contends that asserted unlawfulness of the arrest vitiates, as support for the search warrant, information obtained at the time of the arrest. The officer who actually made the arrest related in his affidavit that he saw "a plastic bag containing approximately 14 ounces of white powdery substance, which appeared to be cocaine, on a table in the living room." He saw an "Ohaus scale" in the front bedroom, and stated that he "has seen Ohaus scales used as a weighing

device on many occasions in which illicit drug sales were being made." Also set out in the affidavit are the personal observations of Agents McCampbell and Brown, whose presence in the residence at the time of their observations was concededly lawful.

Although we hold otherwise, assuming arguendo that the affiant's observations were the fruits of an unlawful arrest and must be excluded, is the warrant thus rendered invalid? The question is whether, considering only the personal observations of McCampbell and Brown, was there a substantial basis for concluding that contraband was to be found on petitioner's premises. (*People v. Hill* (1974) 12 Cal.3d 731, 759 [117 Cal.Rptr. 393, 528 P.2d 1], citing *Theodor v. Superior Court* (1972) 8 Cal.3d 77, 100-101, fn. 14 [104 Cal.Rptr. 226, 501 P.2d 234].)

The affidavit showed, without reference to any observations of the arresting officer, that (1) Agent McCampbell went to the home of petitioner; (2) she was admitted by him; (3) she was shown approximately one pound of white powdery substance which petitioner told her was cocaine; (4) she left and immediately returned with fellow-agent Brown, who was to purchase the cocaine; (5) both were admitted by the defendant; (6) Brown tested the powder to verify that it was cocaine; (7) the test was positive; and (8) Brown was qualified to make the test. This competent evidence is sufficient to support the magistrate's finding of probable cause to believe that contraband was present. The affiant's informants (fellow agents) spoke from personal knowledge concerning their actions and observations (see *Aguilar v. Texas* (1964) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509]), and affiant gained all of his information through "official channels" (see *People v. Ruster* (1976) 16 Cal.3d 690 [129 Cal.Rptr. 153, 548 P.2d 353, 80 A.L.R.3d 1269]). We conclude that the warrant was valid whether or not the arrest was lawful.

IV

Should the Seized Pills be Suppressed
as Beyond the Warrant's Scope?

██  Contraband pills (methaqualone, amphetamine, methylenedioxy amphetamine), not mentioned in the warrant, were seized at the place authorized to be searched. There is no evidence suggesting that the police were not acting in good faith in executing the warrant. It was

proper for them to seize the additional contraband which they found. (*Skelton* v. *Superior Court* (1969) 1 Cal.3d 144, 157 [81 Cal.Rptr. 613, 460 P.2d 485].)

## V

### Is the Search Warrant Unconstitutionally Broad and Vague?

■ Petitioner attacks the part of the warrant that authorizes seizure of "any papers or writings, records that evidence dealings in controlled substances including, but not limited to address books, ledgers, lists, notebooks, etc." He claims the quoted language "is so broad and vague that it has absolutely no limits." This argument ignores the qualifying clause—"that evidence dealings in controlled substances"; each record, book, etc. seized must evidence dealings in controlled substances. As so limited, the authorization is not "overly broad."

Petitioner further complains that many items not described in the warrant were seized under color of its authority. But the law makes provision (Pen. Code, § 1540) for recovery of such items by the person entitled to possession. Suppression of contraband or other evidence which *was* covered by the warrant is not an available remedy.

■ Petitioner argues that the quoted language "substantially interferes with the defendant's right of privacy under the state and federal Constitutions." The same may be said of every warrant authorizing law enforcement officers to search a citizen's home; hence, the constitutional requirement of a judicially authorized warrant supported by probable cause. The argument is without merit.

The alternative writ is discharged; the petition is denied.

Christian, Acting P. J., concurred.

**POCHÉ, J.**—I concur in the judgment and in parts IV and V of the lead opinion.

Before the entry by the three officers led by Officer Platt which gives rise to appellant's primary contentions, other undercover police officers were already lawfully in the residence and were eyewitnesses to the "buy." With respect to them no *Ramey* or knock-notice problems arise.

The observations of these officers formed an independent basis for the search warrant and for the seizure of each item sought to be suppressed. Accordingly, I see no need to address the issues, particularly those of constitutional dimension, discussed in parts I, II and III of the lead opinion. Any illegality involved in the arrest by the other officers or by the entry of the residence by them is irrelevant for purposes of evaluating the denial of this section 1538.5 motion.

Petitioner's application for a hearing by the Supreme Court was denied March 11, 1981.