[Crim. No. 13532. Fourth Dist., Div. One. June 11, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
DWIGHT WILBUR BRADLEY, Defendant and Appellant.

**COUNSEL**

Sheela, Lightner & Castro and Christopher J. Schatz for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, A. Wells Petersen, Harley D. Mayfield and Jay M. Bloom, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WORK, J.**—Dwight Bradley appeals his conviction for feloniously possessing marijuana (Health & Saf. Code, § 11357, subd. (a)), claiming the contraband was illegally seized from his apartment and the trial court erred in denying his motion to suppress (Pen. Code, § 1538.5).[1]

---

[1]All statutory references are to the Penal Code unless otherwise specified.

Although we uphold the trial court's finding of exigency justifying the initial warrantless police entry into Bradley's apartment, we find no exigency or other justification for the warrantless reentry to test suspected contraband after being rebuffed in an attempt to have the district attorney seek a search warrant, and a later reentry to seize materials after a magistrate refused to issue a requested warrant. Accordingly, we reverse with instructions for the trial court to grant Bradley's motion and suppress all evidence seized from his apartment.

*Background*

On January 2, 1981, at approximately 10:30 p.m., three police officers answered a radio call reporting a burglary in progress at a two-story duplex. The reporting party, Mrs. Johnson, who lived in the ground floor apartment, talked to two officers while the other watched the rear of the building. Mrs. Johnson said she heard the sound of breaking glass and footsteps upstairs, knew the occupant was not at home, and he had been burglarized twice before. Jeramiah Myrick, the manager of the duplex, asked the officers to investigate the noises. The officers went upstairs and saw the lower right-hand pane (one of ten 12″ x 12″ panes of glass on the front door) was broken out, but the door was locked from the inside and by a separate hasp lock on the outside. Myrick had no key for the outside lock. Broken glass from the door pane was inside the apartment and there were some edges of glass around the pane but no debris, blood or clothing visible. One officer used his baton to remove the remaining glass and unsuccessfully attempted to crawl through the 12″ x 12″ pane. He withdrew and observed a side window three-quarter inches ajar. He attempted to open the window, but it was stuck. He returned to the door, reached his hand in through the open space, unlocked the door from the inside and, using his baton, pried off the outside lock.

Before entering the apartment, the officers neither heard noise, nor noticed movement inside. They found no one, but saw a stack of $20 bills on the table in the living room, a piece of white, granulated material on top of a dresser,[2] a brown paper bag on the floor of the front bedroom and a clear plastic bag containing pills, hashish and marijuana in the rear bedroom. During the search they found the bathroom window open.[3]

[2]Chemical analysis established this material was 3.99 grams containing cocaine, giving rise to count one. Count one was later dismissed.

[3]The dimensions of this two-story window and its accessibility from the outside are not described in this record.

The officers examined the items, but left the apartment without seizing anything. One officer secured the apartment by remaining outside the front door, while the others went downstairs to call for a search warrant. A deputy district attorney instructed them to contact the narcotics task force (NTF). Some 30 minutes later, NTF Agent Ashcraft arrived. The officers then reentered the apartment with Ashcraft,[4] who examined the items previously observed and conducted a presumptive test on the white, granulated material. After this entry, the officers told Ashcraft they had unsuccessfully attempted to have the district attorney get a telephonic search warrant. Ashcraft then contacted a magistrate for a search warrant, but the warrant was refused. Undaunted, Ashcraft returned to the apartment and seized the items for which he was denied a search warrant, some of which, but not all, were restricted drugs and paraphernalia. Bradley claims the initial "break-in" was illegal because there were no exigent circumstances, and, in any event, the materials were seized during an unlawful entry after the magistrate refused to issue a warrant.

### Discussion

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." (U.S. Const. 4th Amend.; Cal. Const. art. I, § 13.) "All people are by nature free and independent, and have certain inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing and obtaining safety, happiness, and privacy." (Cal. Const., art. I, § 1.)

*People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621], and *People* v. *Leyba* (1981) 29 Cal.3d 591, 596-597 [174 Cal.Rptr. 867, 629 P.2d 961], define the two-step process by which a superior court rules on a motion to suppress evidence under section 1538.5, and the different standard by which we review each of those steps. ■ "In the first step the trial court must 'find the facts' relating to the challenged search or seizure: e.g., it must decide what the officer actually perceived, or knew, or believed, and what action he took in response. These are traditional questions of fact, and the statute vests

[4]Other NTF agents also arrived and entered the apartment.

the superior court with the power to decide them. (Pen. Code, § 1538.5, subd. (i).) Accordingly, we reaffirmed in *Lawler* (at p. 160) that for the purpose of finding those facts 'the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor the exercise of that power, and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence.'

"No less important, however, is the second step of the process. As we observed in *Lawler*, 'The trial court also has the duty to decide whether, on the facts found, the search was unreasonable within the meaning of the Constitution.' (*Ibid.*) Because 'that issue is a question of law,' the *appellate court is not bound by the substantial evidence standard in reviewing the trial court's decision therein.* Rather, we explained in such review it is *'the ultimate responsibility of the appellate court to measure the facts, as found by the trier, against the constitutional standard of reasonableness.'* (*Ibid.*) *On that issue, in short, the appellate court exercises its independent judgment.* (Fn. omitted.)" (*People v. Leyba, supra,* 29 Cal.3d 591, 596-597; italics added.)

### ■ ■ EXIGENT CIRCUMSTANCES SUPPORT THE INITIAL WARRANTLESS ENTRY

Therefore the first issue to be decided, i.e., whether the officers subjectively entertained the suspicion that an intruder had gained entry to Bradley's apartment, is a question of fact which is impliedly conceded by Bradley on this appeal. However, Bradley argues it was not *objectively reasonable* for the officers to entertain that suspicion, as a matter of law. Scrutinizing this issue, we independently determine the officers' suspicions were constitutionally reasonable in the circumstances of the case. (*People v. Leyba, supra,* 29 Cal.3d 591, 597-598.)

A citizen-informant reported hearing breaking glass and footsteps from an upstairs apartment, the subject of two recent burglaries, the occupant of which was not at home.[5] One 12″ x 12″[6] glass pane was

---

[5] It has repeatedly been held that such an informer may furnish probable cause for a warrantless search or arrest. The rule has often been applied to the area of narcotic offenses. (*Krauss* v. *Superior Court* (1971) 5 Cal.3d 418, 421-422 [96 Cal.Rptr. 455, 487 P.2d 1023], overruled on other grounds in *People* v. *Cook* (1978) 22 Cal.3d 67, 98-99 [148 Cal.Rptr. 605, 583 P.2d 130]; *Burke* v. *Superior Court* (1974) 39 Cal. App.3d 28, 33 [113 Cal.Rptr. 801].)

[6] We judicially notice the mathematical truth of a 12″ x 12″ opening having a 17″ diagonal.

broken out of the door with some remnants of the pane remaining on the edges, and a side window 3/4″ ajar which was not then able to be opened from the outside. These circumstances alone are the exigencies the People rely on to satisfy the requirement of an objective, reasonable suspicion for police entry shortly after the breaking occurred. There is a strong interest in protecting the public, and here, where appearances strongly indicate an attempted entry and a burglary in progress, the officers' subjective belief is not unreasonable as a matter of law. Entry could have been made by a slim adult or juvenile through the broken pane, or through the adjacent window which was then jammed from the inside.

The pertinent questions now become: Assuming the initial entry into Bradley's apartment was due to exigent circumstances thereby making the entry proper, once the exigency disappeared did the NTF officers make an illegal, warrantless reentry and is the denial of the search warrant relevant?

### THE LATER WARRANTLESS ENTRIES

██ Although the initial entry was justified, the officers left the interior of the apartment without removing any item suspected to be related to criminal activity. Once this occurred, they were in the same position as though they were possessed of reliable information showing Bradley's home contained illegal drugs, and they were subject to the same rules of conduct. They were bound to present these facts to a magistrate and obtain a warrant, to obtain consent to enter or reenter because of exigent circumstances. They were refused a warrant, did not seek consent, and do not rely on exigent circumstances to justify the reentries.

The first question to be dealt with is the cessation of the exigency and the reentry by the NTF. ██ An exigent circumstance may justify a search without a warrant. However, after the emergency has passed, the defendant regains his right to privacy, and contraband discovered on a second entry will be suppressed. (*People* v. *Frazier* (1977) 71 Cal. App.3d 690, 694 [139 Cal.Rptr. 573].) In *Frazier*, the evidence indicated two police officers knocked on defendant's door and requested entry to investigate a report of screams. When the defendant opened the door he appeared to be nervous and moved hastily toward his bedroom. One officer testified this aroused his curiosity, and fearing someone was in the bedroom, he followed defendant to protect his own safety or anyone else in the house. The officers found and seized heroin in plain view on

the bed. One of the officers then reentered the bedroom and, following a search, found marijuana in an open cigar box and a paper bag containing a large amount of cash. The court held the evidence of the marijuana and cash seized from defendant's bedroom should have been suppressed as illegally seized, where although police officers had initially properly entered defendant's bedroom and seized the heroin in plain view, the marijuana and cash were discovered during a later, nonexigent search without a warrant by the officers.

Here, the same principle applies, i.e., once the exigency passed, the warrantless search of Bradley's apartment violated his constitutional rights. ■ "The presence of a search warrant serves a high function. Absent grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police. This was not done to shield criminals nor to make the home a safe haven for illegal activities. It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law.... We cannot be true to that constitutional requirement and excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of this situation made that course imperative." (*McDonald* v. *United States* (1948) 335 U.S. 451, 455-456 [93 L.Ed. 153, 158, 69 S.Ct. 191], quoted with approval in *People* v. *Sirhan* (1972) 7 Cal.3d 710, 738 [102 Cal.Rptr. 385, 497 P.2d 1121].)

In *Michigan* v. *Tyler* (1978) 436 U.S. 499 [56 L.Ed.2d 486, 98 S.Ct. 1942], the United States Supreme Court upheld the warrantless search for evidence of arson made several hours after the fire had been extinguished, reasoning that the search was sufficiently related to the initial exigency. However, the court held that a search several weeks later was illegal because it occurred long after the emergency had passed. In contrast to the after-effects of a fire which make it extremely difficult to investigate the causes until the flames and smoke have subsided, an exigency created by the presence of a possible burglar disappears when officers learn there was no intruder or that he has departed.

In *Cleaver* v. *Superior Court* (1979) 24 Cal.3d 297 [155 Cal.Rptr. 559, 594 P.2d 984], the court followed *Tyler*, upholding a search that followed several hours after a gun battle and after the ensuing fire was extinguished. The court noted the entry was necessary to protect evidence from possible destruction, because of the danger of the fire breaking out again. (*Cleaver, supra*, at p. 305; see also *People* v. *Re-*

*miro* (1979) 89 Cal.App.3d 809, 830 [153 Cal.Rptr. 89, 2 A.L.R.3d 1135].)

In *Mincey* v. *Arizona* (1978) 437 U.S. 385 [57 L.Ed.2d 290, 98 S.Ct. 2408], the United States Supreme Court overturned an Arizona Supreme Court ruling that held a murder investigation to be an emergency justifying an extensive search without a warrant. The court noted that true emergency measures, such as searching for other possible victims and the killer, require no warrant. Any evidence in plain view during this emergency search may be seized after the emergency search has been completed; however, no further intrusion is permissible without a warrant.

*People* v. *Amaya* (1979) 93 Cal.App.3d 424 [155 Cal.Rptr. 783], distinguishes *Mincey* v. *Arizona, supra*, 437 U.S. 385, on grounds that in *Amaya* no suspect had been apprehended and police could reenter the crime scene to seize items that they could reasonably believe would result in the perpetrator's identification and apprehension.

California cases upholding the right of officers to reenter a residence to seize contraband previously observed during lawful entries uniformly stress the officers initial entry was terminated because the officers were concerned for their safety (*People* v. *Hamilton* (1980) 105 Cal.App.3d 113 [164 Cal.Rptr. 153]; *People* v. *Superior Court* (*Quinn*) (1978) 83 Cal.App.3d 609 [147 Cal.Rptr. 921]), or the reentry itself was justified by exigent circumstances to preserve life (*People* v. *Soldoff* (1980) 112 Cal.App.3d 1 [169 Cal.Rptr. 57]).

■ Given there was no longer an exigency to justify an entry, the reentry of the narcotics force along with the investigating officers violated Bradley's constitutional rights. The apartment was secured and the contraband in no danger of being dissipated. There was nothing to prevent them from continuing efforts to obtain a search warrant through regular affidavit procedures when telephonic procedures proved futile.

Assuming the original entry was justified, the contraband in plain view properly could have been seized. The officers chose not to do so, opting instead to call for assistance from experienced narcotics investigators to identify the suspected material. Later, when tests showed the items' probable narcotic nature, the police took the time to ask for a

telephonic warrant. Only when this was refused did they decide to take matters (and the suspected contraband) into their own hands.

### Police Officers May Not Lawfully Disregard a Magistrate's Refusal to Issue a Search Warrant

The significance of the magistrate's refusal to issue the telephonic warrant was raised both at the preliminary and the section 1538.5 hearing before trial. The first occasion was fruitless because the impatient magistrate brusquely blocked Bradley's efforts to delve into the facts underlying the denied search warrants, while the second failed because a concerned, patient, courteous judge could not be persuaded the inquiry was relevant, since he believed it required him to second-guess the thought processes of the magistrate. Not so! It is the fact warrants were denied that is meaningful, rather than the magistrate's motives for denying. It is because a magistrate reviewed facts presented to establish probable cause objectively and either found them insufficient to establish probable cause, or determined the initial entry was illegal. This is what the Fourth Amendment is all about; to require law enforcement officers to subordinate their subjective (self-interested) analysis of probable cause to the detached objective balancing of an impartial magistrate. This requirement was born from constitutional concern, embodied in the Fourth Amendment, to provide a buffer against arbitrary intrusions into one's home. One of the most zealously guarded freedoms is the right to be free from illegal searches. ■ A search without a warrant is presumed unreasonable, and cannot be justified by probable cause alone. (*Agnello v. United States* (1925) 269 U.S. 20, 33 [70 L.Ed. 145, 149, 46 S.Ct. 4, 51 A.L.R. 409].) Nor may exigency alone do so. ■ Where the issue of probable cause is submitted to the magistrate and found wanting, whether correctly or erroneously, it would completely demolish the bulwark of the Fourth Amendment if such searchers were free to ignore an unfavorable determination, enter and seize materials without a warrant and then contest the magistrate's determination at a later hearing.

Judicial officers, not law enforcement personnel, are vested with authority to balance a citizen's right to privacy against the government's right to enter a private home to search for and seize property. (*Johnson v. United States* (1948) 333 U.S. 10, 13-14 [92 L.Ed. 436, 440, 68 S.Ct. 367].) Contrary to the state's contention, existence of probable cause does not render the warrant procedure irrelevant. (*Coolidge v.*

*New Hampshire* (1971) 403 U.S. 443, 450 [29 L.Ed.2d 564, 573, 91 S.Ct. 2022].)

It is irrelevant that, for the purposes of applying the exclusionary rule, facts surrounding a warrantless entry may be analyzed at an evidentiary suppression hearing with equal force whether the governmental intrusion was made without applying for a search warrant or only after a magistrate refused to issue one. For, neither the California nor United States Constitution includes warrant requirements merely to aid in suppressing evidence wrongfully seized. Rather, these safeguards are to insure the security of our persons, homes and personal effects. To permit intrusions into these private areas after a search warrant has been refused, subject only to a review at a later motion to suppress, would completely neutralize the privacy safeguard afforded by the warrant requirements. (*People v. Cook, supra*, 22 Cal.3d 67, 98, 99 [148 Cal.Rptr. 605, 583 P.2d 130].)

Judgment reversed and the matter remanded. The superior court is ordered to suppress the evidence seized from Bradley's apartment and to set aside the information for lack of probable cause.

Staniforth, Acting P. J., and Cazares, J.,* concurred.

A petition for a rehearing was denied July 8, 1982, and respondent's petition for a hearing by the Supreme Court was denied August 18, 1982. Richardson, J., was of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.