Opinion
ROTHMAN, J.
The People appeal from an order granting defendants’ motion to suppress evidence pursuant to Penal Code section 1538.5.
Based on information received from an anonymous informant that some male Mexicans living at an address in Pomona were dealing in stolen guns, Officer Vincent Alvarez (Alvarez) of the Pomona Police Department, working undercover and equipped with a wireless transmitter, drove to the described location to attempt a “sale” to the suspects. A radio receiver was located in a police surveillance unit parked nearby where a total of nine backup officers were to wait until they heard Alvarez, via the transmitter, count the money received for the guns. At that point they were to come onto the scene and back Alvarez up.
After arriving at the designated address, Alvarez saw a man in a parked car matching the description he had been given of a man named “Luie.” The man was later identified as defendant Barthel. Alvarez testified that he said to Barthel, “I understand you buy stolen guns for a good price,” to which Barthel answered, “If they’re good guns I’ll buy them.”[1] Alvarez then asked whether Barthel wanted to see the guns and, after Barthel said that he did, Alvarez suggested that they go inside the house to look at them.
Once inside, Barthel began inspecting the guns. Defendant Garcia then entered the house and Barthel handed him one of the guns. Garcia told Barthel that he didn’t have money for the guns but that if Barthel bought them, he would pay Barthel back. When Barthel and Garcia asked Alvarez who he was, Alvarez told them that he would not say because he had stolen the guns. Alvarez then asked for $100 cash for each of the guns, which Barthel agreed to pay. The exchange was made and Alvarez counted the cash out loud several times as a cue to the backup unit. However, unbeknownst to Alvarez, the transmitter had malfunctioned and the backup unit had not heard what transpired in the house.
Alvarez then left the house and, when he was approximately 14 to 15 feet *Supp. 4 from the front door, signaled the other officers to come. As they began arriving, Alvarez went back into the house, with his weapon drawn, announcing “Police” as he entered. The other officers followed close behind.
Barthel and Garcia were placed under arrest and handcuffed and the weapons Alvarez had just sold to them were seized. Alvarez then asked Barthel if he could see if there were any more weapons in the house to which Barthel replied, “Yes, of course. ” A search of the house uncovered a rifle in one of the bedrooms.
Defendants’ moved to suppress evidence of the weapons seized on the grounds that Barthel’s consent to search the house was not voluntarily given. Defendants also urged that, based on the decision in People v. Ramey (1976) 16 Cal.3d 263 [127 Cal.Rptr. 629, 545 P.2d 1333], the fact that the officers did not have a warrant for defendants’ arrest rendered the subsequent search inadmissible. Without ruling on the voluntariness of the consent, the trial court held that once Officer Alvarez left the house he was required to obtain a warrant before reentering to arrest defendants. Thus, since Officer Alvarez’ reentry into the house was illegal, the subsequent search was also illegal irrespective of Barthel’s consent.
On appeal, the People contend that the trial court erred in ruling that, under the circumstances presented herein, a Ramey arrest warrant was required before Officer Alvarez could lawfully reenter the house to effect the arrests of defendants.
In People v. Ramey (1976) 16 Cal.3d 263 [127 Cal.Rptr. 629, 545 P.2d 1333], police officers received information from a licensed private investigator, whose home had been burglarized, that the defendant had admitted owning one of the guns taken during the burglary. Although the defendant claimed that he had since sold the gun, the investigator suspected from the defendant’s evasive responses to questions concerning the purchaser that the defendant was still in possession of the gun. Based on this information, the officers concluded that there was probable cause to arrest the defendant for receiving stolen property arid, approximately three hours later, proceeded to his residence to effect his arrest without first securing a warrant. After arriving at the defendant’s apartment, the officers knocked on the door with their service revolvers drawn. When the defendant opened the door, the officers identified themselves and displayed their badges, at which point the defendant backed into the living room. The police then followed him into the apartment, placed him under arrest, and proceeded to search the apartment, uncovering various items of contraband. The defendant later moved to suppress the evidence so seized, which motion was denied. On appeal, the Supreme Court reversed on the basis that the search was unlawful as incident to an invalid arrest.
*Supp. 5 In reversing the lower court’s denial of the defendant’s motion to suppress the evidence seized from his apartment, the court in Ramey held that “the protection of article I, section 13, of the California Constitution and the Fourth Amendment of the federal Constitution against violation of the right of the people to be secure in their persons and houses against unreasonable seizures applies to arrests within the home, and that warrantless arrests within the home are per se unreasonable in the absence of exigent circumstances.” (Id.., at pp. 275-276.) “In this context,” the court went on to state, “‘exigent circumstances’ means an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence.” (Id., at p. 276.) Finding that, in the case before it, no such exigencies were present, and pointing to the three hour delay between the officer’s receipt of the information and the arrest, the Ramey court concluded that the failure of the officers to secure a warrant invalidated the arrest as well as the search incident thereto.
Despite this holding, however, subsequent decisions have made it clear that the Ramey warrant requirement is inapplicable where the officers have gained entry into the house with a defendant’s consent. (Toubus v. Superior Court (1981) 114 Cal.App.3d 378, 383 [170 Cal.Rptr. 697]; People v. Evans (1980) 108 Cal.App.3d 193, 196 [166 Cal.Rptr. 315].) These and other decisions have stressed the fact that it is the intrusion into the home to effect the arrest, rather than the arrest in the home which offends the constitutional standards set forth in People v. Ramey, supra, 16 Cal.3d 263, 275-276; In re Danny E. (1981) 121 Cal.App.3d 44, 52-53 [174 Cal.Rptr. 123]; People v. Ford (1979) 97 Cal.App.3d 744, 747-748 [158 Cal.Rptr. 859]. Thus, where “probable cause to arrest arises after the officers have been voluntarily permitted to enter a residence in connection with their investigative work, an arrest may then be effected within the premises without the officers being required to beat a hasty retreat to obtain a warrant.” (In re Danny E., supra, 121 Cal.App.3d, at p. 52, italics in original.) Under these circumstances, the officer already inside the premises may also enlist the aid of other officers outside to enter and assist him in making the arrest. (Toubus v. Superior Court, supra, 114 Cal.App. 378, at p. 384.)
In People v. Evans, supra, 108 Cal.App.3d 193, defendant admitted two undercover police officers into his hotel room after they expressed an interest in purchasing drugs from him. Following the entry of these officers into defendant’s room, other uniformed officers, who had been listening to the conversation taking place in the room by radio, arrived, knocked on the door, and announced their purpose. The undercover officers then placed the defendant under arrest. Defendant’s suppression motion was based on a claim that the officers did not have probable cause to arrest and did not comply with the knock and announce requirements of Penal Code section 844. On appeal, defendant *Supp. 6 urged that he was ineffectively represented by counsel in light of his attorney’s failure to challenge the search on the basis of the warrant requirement set forth in Ramey. After stating that, in light of the fact that defendant voluntarily admitted the officers into his room, compliance with Penal Code section 844 was not required (see People v. McCoy (1974) 40 Cal.App.3d 854, 861-862 [115 Cal.Rptr. 559]), the court in Evans recognized that “[s]imilar considerations underlie the arrest warrant requirement of People v. Ramey, supra, 16 Cal.3d 263, and it is fair to say that if the entry is sufficient to fulfill the Penal Code section 844 exceptions, it is also within the Ramey exceptions.” (108 Cal.App.3d at p. 196.) Thus, since the entry in Evans was invited, and probable cause to arrest was obtained thereafter, the intrusion and ensuing arrest were not in violation of either Penal Code section 844 or Ramey.
In the instant case, it is undisputed that Officer Alvarez’ initial entry into the defendants’ residence was made with defendant Barthel’s consent. It is also clear that, in view of cases cited above, had he remained in the house Alvarez could have lawfully effected the arrest of both defendants without first seeking an arrest warrant, having observed a crime being committed in his presence while lawfully inside the residence. The question is, therefore, whether the fact that Alvarez walked 14 to 15 feet outside of the house, to signal the uniformed officers, rendered his subsequent reentry and arrest of defendants, without his first obtaining a warrant, unlawful. We find that it did and, accordingly, affirm the decision of the lower court.[2]
In People v. Bradley (1982) 132 Cal.App.3d 737 [183 Cal.Rptr. 434], police entered the defendant’s apartment believing that a burglary was in progress. While inside, they observed various illegal drugs in plain view. After examining the contraband, the officers exited the apartment without seizing anything. While the other officers went to call for a search warrant, one officer remained outside the front door of the apartment. Approximately 30 minutes later the officers, accompanied by a narcotics task force agent, reentered the apartment *Supp. 7 and, after a telephonic request for a search warrant was refused, seized the items in question. In reversing the trial court’s denial of defendant’s motion to suppress the evidence so seized, the Court of Appeal held that, although the officers’ initial entry into defendant’s apartment was proper due to the existence of exigent circumstances, the subsequent entry and seizure of evidence were unlawful. In so holding, the Bradley court relied on its earlier decision in People v. Frazier (1977) 71 Cal.App.3d 690 [139 Cal.Rptr. 573] for the proposition that, while an exigent circumstance may justify a search without a warrant, once the emergency has passed the defendant regains his right to privacy and any contraband discovered as a result of the second entry will be suppressed.
In Frazier, two police officers knocked on defendant’s door and requested entry to investigate a report of screams. After the defendant opened the door, he appeared nervous and hastily moved toward the bedroom. This behavior aroused the curiosity of one of the officers who followed the defendant, fearing that he might attempt to get a weapon. The officer found heroin in plain view on the bed. After the defendant was removed to the living room and placed under arrest, one of the officers reentered the bedroom, at which time he noticed an open box containing marijuana. A search of the bedroom closet uncovered cash in excess of $2,200. The Frazier court held that, while the officer’s initial entry into the bedroom was proper to protect his safety, evidence of the marijuana and the cash should have been suppressed because they were discovered during a later nonexigent reentry into the bedroom.
Although these cases do not involve illegal reentries for purposes of arrest and, therefore, do not specifically address the Ramey holding, the same principles are applicable to both arrests and searches in such situations. As the court pointed out in Bradley. “ ‘The presence of a search warrant serves a high function. Absent grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police. This was not done to shield criminals nor to make the home a safe haven for illegal activities. It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law. . . . We cannot be true to that constitutional requirement and excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of this situation made that course imperative. ’ (McDonald v. United States (1948) 335 U.S. 451, 455-456 [93 L.Ed. 153, 158, 69 S.Ct. 191], quoted with approval in People v. Sirhan (1972) 7 Cal.3d 710, 738 [102 Cal.Rptr. 385, 497 P.2d 1121].)” (Bradley, supra, 132 Cal.App.3d, at p. 745.) The Supreme Court in Ramey, expressly held that these same Fourth Amendment protections apply with equal force to arrests within the home. (Ramey, supra, 16 Cal.3d, at pp. 275-276.) We conclude, therefore, that, despite the legality of Officer *Supp. 8 Alvarez’ initial entry, his reentry without consent and in the absence of exigent circumstances rendered the arrest and the search incident thereto unlawful.
The order granting defendants’ motion to suppress is affirmed.
Bernstein, P. J., and Foster, J., concurred.

Although, when asked to repeat what he said to defendants in Spanish, a court interpreter interpreted Alvarez’ initial statement to defendant to be, “I understand that you buy weapons at a good price,” the fact that Alvarez later refused to reveal his identity to defendants, stating as a reason that the guns were stolen, clearly establishes that defendants knew they were purchasing stolen weapons.

In so holding, we reject the People’s contention, made during oral argument, that defendants were “constructively” under arrest prior to Alvarez’ leaving the house. As the court pointed out in People v. Parker (1978) 85 Cal.App.3d 439 [148 Cal.Rptr. 513]: “ ‘An arrest is taking a person into custody, in a case and in the manner authorized by law. . . .’ and may be made by a peace officer. (§ 834, Pen. Code.) ‘An arrest is made by an actual restraint of the person, or by submission to the custody of an officer. ...’(§ 835, Pen. Code.) Thus, ‘[t]he essential elements of an arrest are: (1) taking a person into custody; (2) actual restraint of the person or his submission to custody. [Citations.]’ (People v. Hatcher, 2 Cal.App.3d 71, 75 [82 Cal.Rptr. 323].) ‘[C]ustody occurs if the suspect is physically deprived of his freedom of action in any significant way or is led to believe, as a reasonable person, that he is so deprived.’ (People v. Arnold, 66 Cal.2d 438, 448 [58 Cal.Rptr. 115, 426 P.2d 515].)
“Custody is an objective condition, and is not solely dependent upon the subjective intent of the interrogator to arrest the suspect. (People v. Herdan, 42 Cal.App.3d 300, 306 [116 Cal.Rptr. 641].)” (Id., at p. 443.) There was no indication in the record of the instant case that defendants believed that they were in custody or restrained in any way prior to Alvarez’ reentry into the house.