[No. A030805. First Dist., Div. Four. Apr. 30, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
LUIS P. CESPEDES, Defendant and Appellant.

**COUNSEL**

Manuel E. Nestle, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Thomas A. Brady and Alexandra E. Ramsburg, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SABRAW, J.**—Defendant Cespedes was charged with two violations of Health and Safety Code section 11352 (sale of cocaine). After a motion to suppress evidence pursuant to Penal Code section 1538.5 was denied, defendant pled guilty to the two charges and was placed on three years probation. He appeals arguing the motion was erroneously denied. We disagree and affirm.

### FACTS AND PROCEDURE

The facts presented at the suppression hearing are as follows. On March 9, 1984, Berkeley and San Francisco police officers went to an address in Berkeley to effectuate an undercover drug buy. The building contained an upholstery shop in front with some type of living quarters in the back. Officer Robinson, who was carrying a transmitter, went into the building. The officer purchased one-half ounce of cocaine from defendant and then agreed he would come back at 8 p.m. to purchase another one-half ounce. The officer then walked toward the door, gave the signal "Bingo" over the transmitter to alert the other officers that the transaction was complete, and left the building. The officers waiting outside drove the police car around the back and arrested one suspect fleeing out of the back door. Defendant was being arrested at about the same time inside the building. The record is unclear as to whether Officer Robinson reentered to make the arrest or other officers entering the building arrested defendant. The record is also unclear as to whether the cocaine was seized after defendant's arrest or whether Officer Robinson had it with him before the arrest.

The officers then occupied the building until the suspect who was to complete the next transaction arrived and was arrested. (Codefendant Rodriguez.) Prior to trial Rodriguez brought a motion to suppress evidence arguing the occupation of the house by the officers and his subsequent arrest and search were illegal. Defendant joined in the motion on the basis that the officers had no right to enter the premises and arrest him without a warrant. A hearing was held and the motion was denied.

### ANALYSIS

■ Defendant argues his arrest was unlawful because the police officers did not have an arrest warrant. He acknowledges that the initial entry by Officer Robinson was legal because he consented to his entry. (*People v. Superior Court (Kenner)* (1977) 73 Cal.App.3d 65, 68-69 [139 Cal.Rptr. 343]; *People v. Newton* (1980) 107 Cal.App.3d 568, 577-578 [166 Cal.Rptr. 60].) However, once he left the other officers had no right to burst into his resi-

dence and arrest him, and Officer Robinson did not have a right to reenter. Thus any evidence seized pursuant to this alleged invalid arrest should have been suppressed.

In reviewing the decision denying defendant's section 1538.5 motion, we note the power is vested with the trial court "to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences." However whether the search was reasonable is a question of law. Therefore, "[I]t becomes the ultimate responsibility of the appellate court to measure the facts, as found by the trier, against the constitutional standard of reasonableness." (*People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621].) Furthermore, federal constitutional standards govern in determining whether a search is proper. (*In re Lance W.* (1985) 37 Cal.3d 873, 890 [210 Cal.Rptr. 631, 694 P.2d 744].)

Absent exigent circumstances a police officer may not enter a suspect's home to arrest him even if he has probable cause to do so. (*People* v. *Ramey* (1976) 16 Cal.3d 263, 275-276 [127 Cal.Rptr. 629, 545 P.2d 1333]; *Payton* v. *New York* (1980) 445 U.S. 573, 576 [63 L.Ed.2d 639, 644-645, 100 S.Ct. 1371].) "Exigent circumstances" means "an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." (*People* v. *Ramey, supra,* at p. 276.) However, the facts in this case are unlike those in *Ramey* and *Payton* in that we do not have a situation in which the police simply went to the suspect's home and attempted to arrest him without a warrant. Defendant here committed a crime in Officer Robinson's presence when he sold the officer the cocaine. The other officers heard the sale over the radio. The entry and arrest were almost simultaneous to these events. Therefore the question becomes whether absent exigent circumstances the entry of the other officers and/or reentry of Officer Robinson violated the principles set out in *Ramey* and *Payton*. We conclude they did not.

Several California appellate courts have dealt with similar factual situations and issues. In *People* v. *Evans* (1980) 108 Cal.App.3d 193 [166 Cal.Rptr. 315] two undercover police officers went to Evans' motel room to attempt a "buy." They gained consent to enter and began dealing with Evans. After a couple of minutes other officers, who had been listening to the conversation over a radio, arrived and knocked on the door. Evans was placed under arrest and the motel room was searched. On appeal he argued the arrest was invalid pursuant to *People* v. *Ramey, supra,* 16 Cal.3d 263. The appellate court found no *Ramey* violation because Evans had consented to the initial officers entry and because the motel room was being used as much for a place of business as for a residence. (*Id.,* 108 Cal.App.3d at p. 196.)

*Toubus* v. *Superior Court* (1981) 114 Cal.App.3d 378 [170 Cal.Rptr. 697] is similar. In this case an informant (Liz) and an undercover agent went to the defendant's apartment to buy cocaine. After viewing the powder the two left the apartment to get the "purchaser," who was really another agent. The three returned to the apartment and the purchaser then tested the cocaine and sent Liz out to get a scale. This was actually a signal for another officer, who was in charge of the investigation, to enter and arrest defendant. Since the apartment door was ajar the officers simply entered and made the arrest and subsequent search. Defendant argued the arrest was invalid because the officers did not have a warrant and no exigent circumstances existed justifying their entry. The appellate court rejected these arguments pointing out "it is the *entry into* a home that is the evil condemned by the Fourth Amendment." (*Id.,* at p. 382.) It quoted from *Payton* v. *New York, supra,* that "To be arrested in the home involves not only the *invasion* attendant to all arrests but also an *invasion* of the sanctity of the home. This is simply too substantial an *invasion* to allow without a warrant, at least in the absence of exigent circumstances. . . ." (*Toubus* v. *Superior Court, supra,* 114 Cal.App.3d at p. 383 quoting *Payton* v. *New York, supra,* 445 U.S. at pp. 588-589 [63 L.Ed.2d at p. 652].) However "*Payton* and *Ramey* are inapplicable where an agent is invited by a suspect to enter . . . . The Fourth Amendment does not protect 'a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it.'" (*Toubus, supra,* at p. 383.)

Our case is different from *Evans* or *Toubus,* however, because it is not clear whether Officer Robinson made the arrest. Also it appears that he *left* before the backup officers entered the premises. However, because the events were simultaneous, we also find no *Ramey* and *Payton* error. In so holding we disagree with *People* v. *Garcia* (1982) 139 Cal.App.3d Supp. 1 [188 Cal.Rptr. 868]. In *Garcia* an undercover officer drove to a house in Berkeley to effectuate a "buy" of stolen guns. The officer entered the house and defendant began to inspect the guns. After the transaction was completed the officer counted the money out loud several times as a signal to other officers waiting outside to enter and make the arrest. However the transmitter the officer was hooked up to had malfunctioned. He therefore left the house, walked about 14-15 feet from the front door, and signaled to the other officers. He then reentered with the other officers behind him, made the arrest and searched the premises. Defendant argued that under *Ramey* the officer needed an arrest warrant to reenter the house.

Both the trial court and the appellate department of the superior court agreed. The court discussed both *Evans* and *Toubus,* but found those cases distinguishable because officers were already inside the premises when the arrests were made. There was no reentry. The court emphasized that it is

the *intrusion* and *entry* which offends the Fourth Amendment. The court then analogized to two search cases to support its holding. In *People* v. *Bradley* (1982) 132 Cal.App.3d 737 [183 Cal.Rptr. 434] police entered defendant's apartment believing a burglary was in progress. They viewed contraband and then left. About 30 minutes later, after being refused a search warrant, they reentered and seized the contraband. The court held the second search improper relying on *People* v. *Frazier* (1977) 71 Cal.App.3d 690 [139 Cal.Rptr. 573] which had also dealt with a reentry and search. Similarly, defendant here cited two cases in support of his argument, both of which dealt with a reentry and *search* of the premises. (*People* v. *Bradley, supra*; *People* v. *Blackwell* (1983) 147 Cal.App.3d 646 [195 Cal.Rptr. 298].)

We find the superior court's and defendant's reliance on cases like *Bradley* and *Blackwell* unconvincing. Reentering a room and searching it is distinguishable from our situation where an officer *immediately* reenters a house to effectuate an arrest. Such action does not offend one's privacy rights. (Cf. *People* v. *Justin* (1983) 140 Cal.App.3d 729, 738 [189 Cal.Rptr. 662].)

In *People* v. *Justin, supra,* the police went to defendant's house to investigate a report of gunshots. Arriving on the scene they observed defendant wearing only a pair of pants and carrying a gun. He claimed intruders had entered his home and that he had shot two of them and their bodies could be found inside. The three went into the house. The officers did not find any bodies but did observe drug paraphernalia in plain view. They then summoned an ambulance for defendant believing he was suffering from "anxiety or paranoia and hallucinating." They also summoned a narcotics officer. When he arrived they entered the house and he was shown the objects which lay in plain view. At this point another officer with more expertise was summoned. He did some initial tests and then left to get a search warrant.

Defendant argued the subsequent entries and warrantless searches by the officers violated the constitution. He heavily relied on *People* v. *Bradley, supra,* as well as *People* v. *Frazier, supra.* The *Justin* court found these cases distinguishable in "that in both cases the person whose premises were entered did not, as in the instant case, propose and facilitate the entry. The invitation to enter extended by defendant . . . has implications regarding the right to privacy not present in *Bradley* and *Frazier*." (*People* v. *Justin, supra,* 140 Cal.App.3d at p. 738.) The court also criticized the holding in *Garcia* stating "We are unpersuaded by the reasoning of the superior court in that case, first, because it entirely ignores the connection between the implied consent to the initial entry and the defendant's expectation of privacy and, second, because it heavily and we believe improperly relies upon *People* v. *Bradley, supra,* 132 Cal.App.3d 737, and *People* v. *Frazier, supra,* 71

Cal.App.3d 690, cases in which there was no implied consent and therefore no waiver of Fourth Amendment protection." (*Id.,* at 740, fn. 4.) We find the reasoning in *Justin* applicable to our case. The Fourth Amendment is not violated by the facts here because defendant Cespedes consented to the initial entry, and the reentry and arrest was simultaneous not only to this fact but to the crime committed in the officer's presence.

Lastly, we find support for our holding in a recent decision from the Seventh Circuit. There, under almost identical facts, the court found a reentry to arrest a suspect did not violate the principles set forth in *Payton* v. *New York, supra,* 445 U.S. 573.

In *United States* v. *Diaz* (7th Cir. 1987) 814 F.2d 454) the defendant had admitted an undercover agent to his hotel room for the purposes of a drug "buy." The officer tested the cocaine and then told defendant he was going to the lobby to call his "money man" and would be back in about a half hour. The agent left the room and "[w]hen the door was shut behind him, he gave a prearranged signal to the other agents in Room 818, and then knocked on the door of Room 809 again. Diaz opened the door and Mueller said, 'I forgot my keys and coat.' Mueller testified that he was then pushed into the room by the surveillance team. Diaz testified, however, that Agent Mueller dropped to the ground at this point and that he, Diaz, bent over him to see what was wrong and was thereupon rushed by the surveillance team." (*Id.,* at p. 456.)

The court first found that no "exigent circumstances" justified the second entry. However they went on to hold "that Diaz effectively consented to the second entry by virtue of his consent to Mueller's first entry. Agent Mueller was in the hotel room with Diaz's consent, and the fact that Mueller momentarily stepped out to obtain help from other officers in making the arrest did not violate this consent." (*Id.,* at p. 459.)

The court went on to state, "We emphasize that we have applied this doctrine of 'consent once removed' only where the agent (or informant) entered at the express invitation of someone with authority to consent, at that point established the existence of probable cause to effectuate an arrest or search, and immediately summoned help from other officers. We do not intend to suggest by our analysis that one consensual entry means that law enforcement agents may thereafter enter and exit a home at will. In this case, however, the second entry was clearly lawful." (See also *People* v. *Ellers* (1980) 108 Cal.App.3d 943 [166 Cal.Rptr. 888] [arrest unlawful when after the "buy" police drove to a parking lot 1 mile away, spent 10-15 minutes formulating a plan to arrest defendant, and then returned and reentered the house to make the arrest].) We find this reasoning persuasive and similarly

hold the arrest of defendant Cespedes without a warrant was lawful under the circumstances.

The order appealed from is affirmed.

Anderson, P. J., and Channell, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 30, 1987.