[Crim. No. 11311. Fourth Dist., Div. One. Apr. 24, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES GORDON HAMILTON et al., Defendants and
Appellants.

**COUNSEL**

Nareau & Jeffus, Robert J. Nareau, Duncan L. Hunter and Steven S. Kane for Defendants and Appellants.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Harley D. Mayfield and Beatrice W. Kemp, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**COLOGNE, J.**—Charles Gordon Hamilton was charged with unlawful sale of marijuana on November 8, 1978 (Health & Saf. Code, § 11360,

subd. (a)).[1] Hamilton, Joseph Edward Basford and Kirk Monroe Hart were each charged with unlawful possession of marijuana for sale (see § 11359) and sale of marijuana on November 9, 1978 (§ 11360). After the court denied motions to suppress (Pen. Code, § 1538.5) and to dismiss (Pen. Code, § 995), the defendants waived jury trial and submitted their case on the preliminary transcript and the testimony of two witnesses. They were found guilty and timely appeal their judgments (orders granting probation).

Deputy Sheriff Larry Starks, assigned to a narcotics task force, received information that Hamilton was selling marijuana, hashish and "acid" on his boat named *Konita* and conducted a surveillance of the vessel.

On November 8, 1978, after a few weeks of observation, Starks contacted Hamilton and told him a man named "Denny" had told him he could buy a lid of marijuana on the boat. Hamilton invited Starks into an interior cabin away from other people aboard and told Starks he had some marijuana called "sinsemilla," high grade Mexican marijuana, for sale at $45 an ounce. After some haggling over the price, Starks agreed to buy an ounce for $40. Hamilton removed a bag containing marijuana from beneath a mattress and took out some of the contents which he put in a bag and handed to Starks.

After this sale was completed, Starks asked about buying an additional five pounds. Hamilton told him the price was $400 per pound for "sinsemilla" and $450 per pound for "gold." Starks also asked about "acid" (LSD) and was told the price for that was $3.50 a "hit" (dosage). They arranged a meeting for the next day.

On the following day, Starks returned to the *Konita* and arranged with Hamilton for a purchase of five pounds at $400 a pound. Hamilton then accompanied Starks to his car where he produced $2,500 to consummate the sale. Hamilton made a call and about 30 minutes later, Hart and Basford drove up to the dock with a large "Pampers" box in which the large quantity of marijuana, held in six plastic trash bags, was concealed. The marijuana was inspected. Starks told the group he would get the money from his car and left the boat. Hamilton followed

---

[1]Unless otherwise stated, all references are to the Health and Safety Code.

him. Using a prearranged signal, officers arrested the defendants and seized the contraband.[2]

Hamilton, Basford and Hart filed identical briefs.

It is contended the proscription in section 11359 and in section 11360, subdivision (a), referring to "any marijuana" in the context of its statutory definition under section 11018, is vague and does not afford due process of law. For purposes of these sections (§ 11001), marijuana is defined in section 11018 as follows: "'Marijuana' means all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seeds or resin. It does not include the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of the plant which is incapable of germination."

■ The thread of defendants' argument is: Only Cannabis sativa L. is specified in the definition of marijuana; there is a body of botanical thought identifying other species of marijuana, such as Cannabis indica; section 11018 has been construed as including "all plants popularly known as marijuana that contain the toxic agent THC" (*People* v. *Van Alstyne* (1975) 46 Cal.App.3d 900, 917 [121 Cal.Rptr. 363]); and certain publicized trial level cases have upheld the so-called "species defense" to criminal charges involving marijuana. From these factors, defendants conclude the section fails to afford sufficient notice to the general public of the conduct it proscribes. After a special hearing at which the substance here in question was identified by an expert as Cannabis sativa L., the trial court disallowed any testimony pertaining to other species of marijuana and giving rise to a requirement the prosecution show the marijuana in question was Cannabis sativa L. Thus, defendants argue there was insufficient proof.

There is a growing amount of evidence supplied by the botanical community marijuana is not monotypic but polytypic and the plant specie includes not only Cannabis sativa L. but also Cannabis indica as a

---

[2]Starks went to the other room and seized the bag of marijuana that had been hidden under the mattress, but this evidence was suppressed by motion under Penal Code section 1538.5.

separate and distinct species. The law is clear, however, the term "Cannabis sativa L." as used in the code includes all plants popularly known as marijuana (*People* v. *Van Alstyne, supra,* 46 Cal.App.3d 900). "[W]e hold that the term 'Cannabis sativa L.' in section 11018 must be construed as a general term which includes all plants popularly known as marijuana that contain the toxic agent THC."[3] (*Id.,* at p. 917.) It is significant also the federal cases dealing with this subject under a similar single species statutory definition also reach the same conclusion (*United States* v. *Walton* (D.C. Cir. 1975) 514 F.2d 201; *United States* v. *Honneus* (1st Cir. 1974) 508 F.2d 566; *United States* v. *Kinsey* (2d Cir. 1974) 505 F.2d 1354; *United States* v. *Gaines* (5th Cir. 1974) 489 F.2d 690; *United States* v. *Rothberg* (2d Cir. 1973) 480 F.2d 534, cert. den. 414 U.S. 856 [38 L.Ed.2d 106, 94 S.Ct. 159]; *United States* v. *Moore* (3d Cir. 1971) 446 F.2d 448; *United States* v. *Sifuentes* (4th Cir. 1974) 504 F.2d 845; *United States* v. *Kelly* (9th Cir. 1976) 527 F.2d 961; *United States* v. *Gavic* (8th Cir. 1975) 520 F.2d 1346; *United States* v. *Spann* (10th Cir. 1975) 515 F.2d 579; *United States* v. *Wornock* (7th Cir. 1979) 595 F.2d 1121).

Since California law does not draw a distinction among the different types of marijuana, it is not necessary for the prosecutor to specify and prove the species of marijuana subject of the charge. No reasonable doubt exists in the statute as to what plants are subject of the prosecution and no violation of due process exists because of the description of these plants. The combination of statutory and case law on the subject is sufficiently clear to meet constitutional standards (see *People* v. *Belous* (1969) 71 Cal.2d 954, 960 [80 Cal.Rptr. 354, 458 P.2d 194]; Evid. Code, § 160).

■ Defendants contend the seizure of the marijuana taken from the Pampers box in the boat was unlawful since Starks had left the premises (boat) and his later reentry, being without consent, required a search warrant. The court below ruled the seizure was proper under the "plain view" doctrine. In *People* v. *Superior Court* (*Quinn*) (1978) 83 Cal.App.3d 609 [147 Cal.Rptr. 921], the identical issue was addressed and the court stated: "Gamberg's entry into the Arcade immediately followed the removal therefrom of the Quinns and the neutralization of the threat they posed to the officers. Gamberg's observation of contraband in the bedroom occurred as a result of his search there for Lee; he observed what was in plain view from a position where he had a lawful

---

[3]This symbol denotes "tetrahydrocannabinol" and is unquestionably the cause for a hallucinogenic or euphoric effect produced by the drug's use.

right to be. Gamberg obviously had the right to bag, tag and seize the evidence then and there. That he did not do so no doubt can be ascribed to his primary concern with the apprehension of Lee whom he believed still to be within the building and who may well by then have armed himself. Having arrested Lee and removed him from the building, Gamberg did not trench upon any constitutionally protected interest by returning for the single purpose of retrieving the items of contraband he had observed moments before in the bedroom but had not then been in a position to seize." (*Id.*, at p. 617.)

The reentry on the boat to obtain the evidence Starks had seen in plain sight before leaving the vessel to secure his own protection and effect the arrest was proper.

Judgment affirmed.

Brown (Gerald), P. J., and Greer, J.,* concurred.

The petition of appellants Hart and Basford for a hearing by the Supreme Court was denied June 25, 1980.

---

*Assigned by the Chairperson of the Judicial Council.