[Crim. No. 17155. Fourth Dist., Div. Three. Oct. 18, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
GARY LEE KEENER, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Ralph H. Goldsen, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Daniel J. Kremer, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Jay M. Bloom and Louis R. Hanoian, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SONENSHINE, J.**—Gary Lee Keener was convicted of assault with intent to commit rape (Pen. Code, § 220),[1] attempted oral copulation of a minor

---

[1]All statutory references are to the Penal Code unless otherwise stated.

(§§ 664/288a, subd. (b)(1)), and false imprisonment (§ 236), with use of a firearm (§ 12022.5). He contends 1) the warrantless seizure of evidence in his apartment violated his Fourth Amendment rights; 2) the court improperly admitted hearsay statements of the victim; and 3) the court improperly admitted evidence of defendant's refusal to allow police to enter his apartment.[2] We agree with contentions one and three, and reverse.

## FACTS

Jeanette K, age 15, agreed to do housework for defendant. After she ironed, cleaned the house and did his laundry, she summoned him from the pool and prepared to leave. Jeanette refused Keener's suggestion she share some champagne after which Keener got a gun, attempted intercourse and orally copulated her. After Jeanette convinced him to stop, she was allowed to leave, although Keener threatened to kill the police and himself if she reported the incident.

Jeanette immediately notified the police, telling them of defendant's whereabouts and threats. The police went to defendant's apartment to talk to him. Officer Clegg knocked on the door, identified himself, and told Keener he wanted to discuss an incident with him. Keener asked if it involved a rape. When Clegg told Keener he wouldn't tell him the specifics until he opened the door, Keener refused to talk further or allow him to enter. Clegg tried for an hour to convince Keener to open the door. When that failed, he summoned a SWAT team. After three and one-half hours of negotiations defendant surrendered.

Officer Tucker, the SWAT team supervisor, believing a second person might be inside, entered the apartment following defendant's arrest. He had been told by Clegg a second person had been heard inside the apartment during the negotiations. Tucker and a second officer searched the apartment but found no one. While inside Tucker saw a gun in a closet.

After Tucker left the apartment and still without benefit of a search warrant, another officer was directed to reenter and retrieve the gun. The officer seized the gun and additional items of physical evidence.

---

[2]Defendant originally couched this issue in the guise of ineffective assistance of counsel arguing counsel failed to object to the admission of the evidence. Defendant filed a petition for writ of habeas corpus which we consolidated with the appeal. In an affidavit attached to the petition, trial counsel alleged he *had* objected in an unreported chambers conference. We then ordered the parties to provide this court with a settled statement concerning that in-chambers conference. (Cal. Rules of Court, rules 7, 12(a) and 36.) Since the record now demonstrates counsel objected, we shall determine the merits of defendant's claim.

Keener testified to hiring Jeanette but denied any sexual advances. He suggested she lied to cover up her consumption of his alcohol while he was at the pool.

## THE WARRANTLESS ENTRY TO RETRIEVE
## PREVIOUSLY OBSERVED EVIDENCE WAS UNLAWFUL

■ " 'The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable.' " (*Mincey* v. *Arizona* (1978) 437 U.S. 385, 390 [57 L.Ed.2d 290, 298, 98 S.Ct. 2408].) Only a few 'specifically established and well-delineated exceptions' (*Katz* v. *United States* (1967) 389 U.S. 347, 357 [19 L.Ed.2d 576, 585, 88 S.Ct. 507]) have been judicially engrafted upon this general proscription and the counterpart set forth in article I, section 13, of the California Constitution. (*People* v. *Cook* (1978) 22 Cal.3d 67, 97 [148 Cal.Rptr. 605, 583 P.2d 130], quoting *People* v. *Ramey* (1976) 16 Cal.3d 263, 270 [127 Cal.Rptr. 629, 545 P.2d 1333].)" (*People* v. *Justin* (1983) 140 Cal.App.3d 729, 734-735 [189 Cal.Rptr. 662].)

■ We first consider whether the warrantless entry into the apartment to search for additional suspects or victims falls within one of the exceptions. There is no ready litmus test for determining whether a particular situation negates the constitutional requirement of a warrant. (*People* v. *Escudero* (1979) 23 Cal.3d 800, 809 [153 Cal.Rptr. 825, 592 P.2d 312].) In each case the claim of exigent circumstances must be evaluated on its particular facts. Where there is reasonable cause to believe additional suspects or potential victims are in a residence, a warrantless entry is permissible. (*People* v. *Block* (1971) 6 Cal.3d 239 [103 Cal.Rptr. 281, 499 P.2d 961]; see also *People* v. *Carney* (1983) 34 Cal.3d 597 [194 Cal.Rptr. 500, 668 P.2d 807]; *Dillon* v. *Superior Court* (1972) 7 Cal.3d 305 [102 Cal.Rptr. 161, 497 P.2d 505]; *Hernandez* v. *Superior Court* (1971) 16 Cal.App.3d 169 [93 Cal.Rptr. 816]; and *Guevara* v. *Superior Court* (1970) 7 Cal.App.3d 531 [86 Cal.Rptr. 657].)

Thus, the police acted properly here in entering the apartment to search for others. When they overheard what was believed to be a second voice inside, the duty to preserve life and their right to protect themselves provided an exigency which obviated the need for a warrant.

■ The conclusion the *initial* search was proper does not end our inquiry, however. The seizure of the gun and other items of evidentiary value did not occur during the sweep search for other persons. Respondent asserts the seizure is supported by the plain view doctrine, since the items seized

were observed when Tucker was lawfully in the apartment. (*Chimel* v. *California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034].) It is correct Tucker could have seized the gun during the initial entry, but once he left, the police "were in the same position as though they were possessed of reliable information [showing the apartment contained incriminating evidence] and were subject to the same rules of conduct. They were bound to present these facts to a magistrate and obtain a warrant, to obtain consent to enter, or reenter because of exigent circumstances." (*People* v. *Bradley* (1982) 132 Cal.App.3d 737, 744 [183 Cal.Rptr. 434].) When the exigency ends, the warrant requirement reemerges. (*People* v. *Frazier* (1977) 71 Cal.App.3d 690, 694 [139 Cal.Rptr. 573].) The second entry to obtain evidence, notwithstanding the original observation of the gun during a lawful search, required a search warrant; the evidence should have been suppressed. (*People* v. *Carney, supra,* 34 Cal.3d 597, fn. 11; *Sanderson* v. *Superior Court* (1980) 105 Cal.App.3d 264 [164 Cal.Rptr. 290]; compare with *People* v. *Hamilton* (1980) 105 Cal.App.3d 113 [164 Cal.Rptr. 153]; *People* v. *Amaya* (1979) 93 Cal.App.3d 424 [155 Cal.Rptr. 783]; *People* v. *Superior Court (Quinn)* (1978) 83 Cal.App.3d 609 [147 Cal.Rptr. 921].)

## DEFENDANT'S REFUSAL TO LEAVE HIS APARTMENT WAS PRIVILEGED

■ Anticipating retrial, we resolve the remaining issues. First, did the court err in permitting the prosecution to introduce evidence showing defendant refused to leave his apartment? Over objection, Officers Clegg (first to arrive at defendant's apartment and negotiator for one hour), Sanchez (negotiator), Stepanovich (negotiator) and Tucker (SWAT team supervisor), testified to what can only be characterized as a siege of defendant's apartment. They described everything from the positioning of individual officers to the tactics employed in minute detail. The negotiators described how they tried to coax Keener out of the apartment and were permitted to detail his responses. An audiotape was played of a recording made outside the door which captured the questions and answers of the negotiation process. In fact, the prosecution's presentation resulted in 106 pages of transcript relating to the sexual assault and 70 pages to the siege. Evidence of the siege was offered to show a consciousness of guilt; i.e., if defendant was not guilty he would have immediately surrendered.

Admission of this questionably relevant evidence violated the privilege to be free from comment upon the assertion of a constitutional right. (See *Jenkins* v. *Anderson* (1980) 447 U.S. 231 [65 L.Ed.2d 86, 100 S.Ct. 2124]; *Doyle* v. *Ohio* (1976) 426 U.S. 610, 619 [49 L.Ed.2d 91, 98, 96 S.Ct. 2240]; *Griffin* v. *California* (1964) 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229].) Although an individual's refusal to consent to a warrantless entry

of his residence may be open to various interpretations and is not encouraged, the assertion of the right itself cannot be a crime nor can it be evidence of a crime. (*Camara* v. *Municipal Court* (1967) 387 U.S. 523, 528-529 [18 L.Ed.2d 930, 935-936, 87 S.Ct. 1727]; *District of Columbia* v. *Little* (1950) 339 U.S. 1, 7 [94 L.Ed. 599, 603, 70 S.Ct. 468]; *United States* v. *Prescott* (9th Cir. 1978) 581 F.2d 1343, 1350-1351.)

Presenting evidence of an individual's exercise of a right to refuse to consent to entry in order to demonstrate a consciousness of guilt merely serves to punish the exercise of the right to insist upon a warrant. It is of no consequence that police had a right to enter without a warrant here, nor does it matter that defendant spoke to the police during the siege. "The right to refuse [entry] protects both the innocent and the guilty, and to use its exercise against the defendant would be, as the court said in *Griffin*, a penalty imposed by courts for exercising a constitutional right." (*United States* v. *Prescott, supra,* 581 F.2d 1343, 1352.)

Respondent asserts *People* v. *Redmond* (1981) 29 Cal.3d 904 [176 Cal.Rptr. 780, 633 P.2d 976] rejects this reasoning and allows evidence of defendant's refusal to permit entry, but *Redmond* is readily distinguishable. There defendant told his mother to refuse a warrantless entry to the *mother's* garage, where police ultimately discovered incriminating evidence. In upholding the conviction, the court is careful to observe Redmond was not asserting *his* Fourth Amendment right, but rather the right of a third person. ■ There is no privilege to assert the constitutional rights of others and thus no reason to preclude admission of an attempt to do so. Nothing in *Redmond* diminished Keener's right to refuse entry or the privilege prohibiting comment upon the exercise of the right.

### THE VICTIM'S HEARSAY STATEMENTS WERE PROPERLY ADMITTED

Finally defendant asserts the testimony of Officers Clegg and Jankowski, in addition to the victim's friend, regarding out of court statements made by Jeanette were inadmissible hearsay. Keener's objection was properly overruled.

Respondent concedes the degree of detail in one of the three statements violates the "fresh complaint doctrine" (*People* v. *Burton* (1961) 55 Cal.2d 328 [11 Cal.Rptr. 65, 359 P.2d 433]) but asserts the testimony was admissible as a prior consistent statement. Evidence Code section 791, subdivision (a), provides: "Evidence of a statement previously made by a witness that is consistent with his testimony at the hearing is inadmissible to support his credibility unless it is offered after: (a) Evidence of a statement made

by him that is inconsistent with any part of his testimony at the hearing has been admitted for the purpose of attacking his credibility, and the statement was made before the alleged inconsistent statement.''

■ Defendant's counsel cross-examined Jeanette before the admission of her hearsay statements. He confronted her with prior inconsistent statements made to the police and in her testimony at the preliminary examination. It was clear her credibility was being attacked through inconsistencies in her various statements. Her prior consistent statements were properly admitted.

The order denying defendant's motion to suppress, and the judgment, are reversed.

Trotter, P. J., and Crosby, J., concurred.