[Crim. No. 12062. Third Dist. Nov. 23, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN EDWARD CHESTNUT, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Cynthia A. Thomas, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Joel Carey and Robert D. Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

EVANS, J.—Following denial of his motion to suppress evidence (Pen. Code, § 1538.5), defendant entered a negotiated plea of guilty to the charge he was an ex-felon in possession of a gun (Pen. Code, § 12021). He appealed, contending the trial court erred in denying his suppression motion. We previously disagreed and in a published opinion filed January 20, 1983, affirmed the judgment. Subsequently, the Supreme Court granted a hearing and retransferred the cause to this court for reconsideration in light of the decision in *People* v. *Carney* (1983) 34 Cal.3d 597 [194 Cal.Rptr. 500, 668 P.2d 807].

We have considered the rationale and conclusion of *Carney* and find that decision to be factually inapplicable to the circumstances of this case and again conclude that the vehicle search was proper.

At approximately 3:20 a.m. one morning Sacramento Police Officers Peters and Olsen, while on patrol in an area where a number of recent car burglaries had taken place, saw a Ford van parked facing the wrong way. Officer Peters approached the passenger door and saw an individual (later identified as Ross Wardlaw) sitting in the passenger seat. When the officer shined his flashlight into the van toward the console area to determine if the radio had been tampered with, he observed an open cigar box with a plastic bag containing a green leafy material along with some cigarette rolling papers. Wardlaw immediately reached over and closed the lid to the box. Peters then assisted Wardlaw from the van and placed him under arrest for possession of marijuana. While doing so he heard a rustling noise coming from behind the van's front bucket seat and glimpsed a hurried movement. The officers investigated and found defendant, who was removed and arrested. A pat-down search of Wardlaw produced a hypodermic syringe.

After both suspects were secured in the police vehicle, the officers searched the van and found a sawed-off shotgun and 10 rounds of ammunition under a makeshift couch, a muzzle-loading handgun beneath the cushion of a chair, and a .38 Remington automatic pistol in a makeshift chest of drawers.

The trial court found that the plain-view observation of the marijuana coupled with the rustling in the van gave rise to the inference "that there was other contraband in there being secreted, . . . [giving] the officer probable cause to go find that contraband." It held that the immediate search was proper because of "the mobility aspects of a vehicle."

Defendant challenges that ruling on appeal. He contends the search (1) was made without probable cause and exigent circumstances, and (2) violated his privacy expectations. We disagree.

The plain-view observation of marijuana, followed by the removal of Wardlaw and the simultaneous rustling from the back of the van, where defendant was discovered, established probable cause to believe there might be additional contraband in the van. The United States Supreme Court in *United States* v. *Ross* (1982) 456 U.S. 798 [72 L.Ed.2d 572, 102 S.Ct. 2157], recently held that if police have probable cause to believe contraband is being carried in a vehicle, they may conduct a search of every part of the vehicle and its contents. (*Id.,* at p. 825 [72 L.Ed.2d at p. 594].) "The scope of a warrantless search of an automobile . . . is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found." (*Id.,* at p. 824 [72 L.Ed.2d at p. 593].)

In determining whether a state Constitution provides greater protection than its federal counterpart, we are guided by the California Supreme Court's pronouncement in *People* v. *Teresinski* (1982) 30 Cal.3d 822, 836 [180 Cal.Rptr. 617, 640 P.2d 753]: "Decisions of the United States Supreme Court, . . . are entitled to respectful consideration [citations] and ought to be followed unless persuasive reasons are presented for taking a different course." No such reasons have been proffered here.[1]

However, defendant claims this case is factually distinguishable from *Ross* and the ordinary automobile exception case. His premise is that those traveling in motor homes and truck campers have a greater expectation

---

[1]Both *People* v. *Minjares* (1979) 24 Cal.3d 410, 424 [153 Cal.Rptr. 224, 591 P.2d 514], and *People* v. *Dalton* (1979) 24 Cal.3d 850, 860 [157 Cal.Rptr. 497, 598 P.2d 467], cited by defendant, are based on the federal Constitution only.

of privacy than those traveling in ordinary motor vehicles, reasoning that the former are more akin to a home than a motor vehicle designed and used principally for transportation. A similar argument was recently considered in *People* v. *Carney, supra,* 34 Cal.3d at pages 606-607. That case involved a motor home. With respect to the privacy determination made, the California Supreme Court found a "motor home" search invalid; in that opinion the court stated, "In the present case, we are called upon to apply this reasoning to a hybrid—a motor home—which has the mobility attribute of an automobile combined with most of the privacy characteristics of a house. Defendant maintains that the factors discussed above that dilute the expectation of privacy in automobiles do not so affect the privacy interests in a motor home. We agree.

"First and foremost, unlike an automobile the primary function of a motor home is not transportation. *Motor homes are generally designed and used as residences; their essential purpose is to provide the occupant with living quarters, whether on a temporary or a permanent basis. Both Vehicle Code section 396 and Health and Safety Code section 18008 refer to a mobile home not as a vehicle but as a transportable 'structure.'* The motor home at issue here was equipped with *at least a bed, a refrigerator, a table, chairs, curtains and storage cabinets.* Thus the contents of the motor home created a setting that could accommodate most private activities normally conducted in a fixed home. The configuration of the furnishings, together with the use of the motor home for all manner of strictly personal purposes, strongly suggests that the structure at issue is more properly treated as a residence than a mere automobile.

"Homes are afforded the maximum protection from warrantless searches and seizures. (*People* v. *Ramey* (1976) 16 Cal.3d 263, 271, 273-276 [127 Cal.Rptr. 629, 545 P.2d 1333]; *People* v. *Dumas, supra,* 9 Cal.3d at p. 882, fn. 8 [109 Cal.Rptr. 304, 512 P.2d 1208].) The ' "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." ' (*Payton* v. *New York, supra,* 445 U.S. at p. 585 [63 L.Ed.2d at p. 650, 100 S.Ct. 1371].) The fact that a motor home is not affixed to real property does not demean its protected status as a house." (Fn. omitted; italics added.)

The rationale applied to the motor home in *Carney* is not apposite in the instant proceeding. In this case, a van, not a motor home, was involved. A van may be generally defined as a motor vehicle, usually enclosed, which is used for the transportation of goods and animals as well as people, and which is not designed as a place of human habitation. (See Health & Saf. Code, § 18010; Webster's New Internat. Dict. (3d ed. 1961) p. 2531.) The van used here falls within that definition. It was not designed for

use as a residence, did not resemble a vehicle used as a residence, nor was it equipped as such. The evidence does not reveal the existence in the van of "at least a bed, a refrigerator, a table, chairs, curtains and storage cabinets" as did the mobile home in *Carney.* The subject vehicle was in all respects and appearances what it was designed to be used for, purely a means of transportation, not a place of residence.

*Ross* makes palpably clear that it is the mobile characteristics of motor vehicles that justify their immediate warrantless search based upon probable cause. As first explained in *Carroll* v. *United States* (1925) 267 U.S. 132, 153 [69 L.Ed.543, 551, 45 S.Ct. 280, 39 A.L.R. 790], "the guaranty of freedom from unreasonable searches and seizures by the 4th Amendment has been construed, practically since the beginning of the government, as recognizing a necessary difference between a search of a store, dwelling house, or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon, or *automobile* for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." (Italics ours.) That analysis has not been extended to a limited extent in California to mobile homes. (*People* v. *Carney, supra,* 34 Cal.3d 597.)

*Ross* held the permissible scope of the search extended to every part of a vehicle and its contents that might contain the object of the search. (456 U.S. at pp. 821, 823-824 [72 L.Ed.2d at pp. 591, 592-593].) This was so even though a person could have a well-manifested expectation of privacy in luggage or packages contained in the car; the court stated that these interests "must yield to the authority of a search." (*Id.,* at p. 823 [72 L.Ed.2d at p. 593].) So too must defendant's interests yield. We think it wholly impracticable to impose on police the burden of assigning a constitutionally significant value to a person's privacy expectation in motor vehicles because of obscuration of windows on a van or other vehicle other than a motor home. Vans, pickup trucks, and other passenger car-type vehicles, which do not appear to have been intended for use other than transportation, do not fall within the "hybrid" use exception declared in *Carney.*

Defendant's van was parked on a public street. There is nothing in the record to indicate it was identifiably immobile and, unlike a motor home, nothing about its appearance to indicate it was used as a residence as well as a motor vehicle. It may be that subjectively defendant may have had a greater expectation of privacy than someone driving, say, a convertible. However, that does not remove him from the ambit of the automobile exception.

The rationale of *Ross* is applicable.

The judgment (order) is affirmed.

Puglia, P. J., and Sparks, J., concurred.

A petition for a rehearing was denied December 19, 1983.